IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

2005 AUG 18 PM 1:43

| | |
|---|---|
| RAYMOND HERNANDEZ-ALBINO | : CIVIL ACTION NO. _____ |
| Petitioner | U.S. _____ |
| | : CRIMINAL NO. 97-0099(HL) |
| VS. | : |
| | : [HECTOR M. LAFFITTE, J.] |
| UNITED STATES OF AMERICA | |
| Respondent | : PRO-SE |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION
### FOR RELIEF FROM JUDGMENT UNDER
### FED. R. CIV. P. RULE 60(b)(6)

Petitioner reminds the court that he is a pro-se litigant
and ask this court to hold him to a more liberal standard than
a practicing professional, and Petitioner asks that the court
will consider substance over form. Should Petitioner have provided
or used the wrong or improper form, Petitioner asks that the
court will consider the merits of the matter presented herein
the form necessary to maximize the workings of essential justice
by virtue of the substance of the issues. Petitioner also asks
this Honorable Court to consider the limited Resources of the
law library here at this camp, since Petitioner does not have
any Shepardizing books to help achieve more precedent cases
from our circuit and though Petitioner pro-se attempts to be
thorough, any deficiencies in supporting case law is due to
these limited Resources.

**NOW COMES PETITIONER, RAYMOND HERNANDEZ-ALBINO,** hereby
moves this Honorable Court to respectfully file this Memorandum
of law in support of motion for relief from judgment imposed
by this court on April 20, 1998. Pursuant to Federal Rules of

(1)

Civil Procedure, Rule 60(b)(6) and states the following:

## JURISDICTION

As a preliminary matter, Rule 60(b) provides, the court may relieve a party, or a party legal representative from a final judgment order, or proceeding from the following reasons... "(6) Any other reason justify relief from the operation of the judgment." This Rule also abolished Writs of Coram Nobis and Audita querela. Furthermore, the Sister Second Circuit has held that a motion pursuant to Fed. R. Civ. P. Rule 60(b) to vacate a judgment denying habeas corpus relief is not a successive habeas petition.

SEE **Rodriguez vs. Mitchel,** 2nd. Cir., No. 99-2170, June 6, 2001. Not to mention the fact that a motion for relief from a final judgment of order under Rule 60(b)(6), is not subject to a one year time limit. SEE **United States vs. Cirami,** 563 F.2d 26, 32 (2nd. Cir. 1997), in accord, **Jones vs. Capital Cities/ ABC, inc,** 168 F.D.R. 477 (S.D. N.Y. 1996). The Petitioner will demonstrate that this motion was brought within a reasonable time. Accordingly, this Rule is applicable to actions under Habeas Corpus.

The Supreme Court has held that the principle of the "end of justice" at very least includes a claim of actual innocence. SEE **Sayer vs. Whitley,** 505 U.S. 333 (1992); **McClesky vs. Zant,** 499 U.S. 467 (1991). This "end of justice" principle applies not only to the trial phase of the case, but also in the context of an error at the "sentencing" phase.

IN **Eberhardt vs. Integrated Design & Const., Inc.,** 167 F. 3d 861 (4th. Cir. 1999). Rule 60(b)(6) allows relief for "any

other reason justifying relief from the operation of the
judgment."

> [Rule 60(b)(6)] has been described as the "catch-all"
> clause because it provides the court with "a grand
> reservoir of equitable power to do justice in a
> particular case" and "vests power in courts adequate
> to enable them to vacate judgments whenever such
> action is appropriate to accomplish justice" where
> relief might not be available under any other clause
> in 60(b).

Relief from judgment under "catch-all" provision is appropriate
when it offends justice to deny such relief, and such relief
will be reversed only if reviewing court finds complete absence
of a reasonable basis and is certain that the decision is wrong.

Furthermore, although Rule 60(b)(6) "gives the District
Court power to vacate judgments whenever such action is appropriate
to accomplish justice," such relief requires a showing of
"extraordinary circumstances."

Petitioner is aware that he faces formidable hurdles in
pursuing a 60(b)(6) claim. Because there must exist "exceptional"
circumstances that justify "extraordinary" relief. This Rule,
however, does have a small escape hatch, in the event of
"extraordinary circumstances."

Under this Federal Rules of Civil Procedure, 60(b)(6)
motion, Petitioner is again proving that the record speaks for
itself upon his innocence. The government never proved it's
burden and the mixture of legal error's and unsupported factfinding
alone justifys that "small escape hatch," that the Honorable
Judge Laffitte can review as abuse of discretion. And the 60(B)(6)

(3)

authorizes a District Court to vacate it's final judgment for "any other reason justifying relief from the operation of the judgment." An extraordinary circumstances does exist, which will be proven in the **Summary of Arguments.**

### STATEMENT OF THE CASE

The sentence imposed after a four day trial before U.S. District Judge Hector M. Laffitte, and a jury in the District of Puerto Rico, at which Petitioner, a respected and successful engineer with no criminal record, was convicted of providing the funds for a drug deal. The Honorable Judge Laffitte, imposed a sentence over fifteen years imprisonment.

The course of proceedings

Raymond Hernandez-Albino, was one of four men arrested on April 23, 1997, in Arecibo, Puerto Rico, in connection with a "Reverse Sting" drug operation. Probable cause was found after a preliminary hearing on April 28, 1997, and Petitioner was detained pending trial.

On May 14, 1997, a grand jury returned a two count indictment in the United States District Court for the District of Puerto Rico, charging Petitioner in count one with conspiracy to Distribute Cocaine, in violation of 21 U.S.C. § 846, and in relation to a drug trafficking offense, as prohibited by 18 U.S.C. § 924(c). Co-defendants Orlando Ramirez-Ortiz, Armando Cabrera-Vargas, and Roberto Francis, were also charged in count one. On May 30, 1997, after arraignment, Petitioner was

(4)

released on $200,000 secured bond.

On July 9, 1997, the grand jury returned a superseeding indictment, charging Petitioner in three counts, Ramirez in three counts, and Cabrera and Francis in one count each. Petitioner was charged with a conspiracy in violation of 21 U.S.C. § 846, existing on April 23, 1997, to possess seven Kilograms of cocaine with intent to distribute them, contrary to 21 U.S.C. § 841(a)(1). In count two Petitioner was charged, as Ramirez, with "knowingly, intentionally and willfully" carrying two firearms during and in relation to the offense charged in count one, in violation of 28 U.S.C. § 924(c)(1). Count three charged Petitioner and Ramirez with knowingly receiving the second 9 millimeter firearm in violation of 18 U.S.C. § 924(k).

Ramirez the lead co-defendant in the indictment, pleaded guilty, then testified for the government at trial pursuant to a plea agreement, Cabrera also pleaded guilty under cooperation agreement, but did not testify at trial. The case against Francis was dismissed prior to trial for lack of evidence.

The trial, against Petitioner alone, commenced on November 10, 1997, with jury selection. Evidence was taken for two days, with argument and jury instructions on November 17, 1997. The jury retired to deliberate, but after two and a half hours, reported that it was dead locked. The trial Judge Laffitte sent the jury a written "Allen" charge, designed to encourage the jury to keep deliberating and attempt to agree. Neither counsel

objected. An hour later, the jury returned it's verdict of guilty on count one and two, and not guilty on count three.

The pre-sentence investigation report (PSI), was submitted to the District Court on February 21, 1998. On March 24, 1998, the defense filed objections to the PSI, and the following day filed a motion for a downward departure. The revised PSI with addendum, was filed April 17, 1998. On April 20, 1998, the District Court ruled on the objections to the PSI, denied the applications for a downward departure, (despite the judge stating that he wish he could depart), and heard the allocutions of counsel and Petitioner. Having determined guidelines of offense level 32 and a criminal history category I, the guideline range was held to be 121 to 151 months, plus five year (60 months) mandatory consecutive sentence under § 924(c).

Judge Laffitte imposed a total sentence of 181 months imprisonment (121 months on count one, plus the 60 months on count two), followed by five years supervised release, no fine, and special assessment of $200.00.

### SUMMARY OF THE ARGUMENTS

I.  CONVICTION SHOULD BE SET ASIDE BECAUSE OF THE
    INEFFECTIVE ASSISTANCE OF COUNSEL.

    A) Petitioner was deprived of the right
       to testify by reason of trial counsel's
       failure to prepare him to testify on his
       own behalf.

    B) Petitioner was deprived of the effective
       assistance of counsel because trial counsel
       failed to request that the court give an
       "ALLEN" charge instruction.

(6)

II.   HONORABLE JUDGE DETERMINED THE DRUG TYPE AND
      QUANTITY, BY HIS OWN FINDINGS.

II.   HONORABLE JUDGES FINDING THAT THERE WAS
      PREPONDERANCE OF EVIDENCE THAT PETITIONER
      WAS THE BOSS IN THAT TRANSACTION.

III)  HONORABLE JUDGES FINDING THAT THERE WAS
      PREPONDERANCE OF THE EVIDENCE THAT PETITIONER
      KNEW THAT THE TRANSACTION WAS FOR DRUGS.

IV)   SENTENCE WAS IMPOSED WHERE BOTH GUIDELINES RANGE
      AND THE APPLICABILITY OF A MANDATORY MINIMUM
      SENTENCE WERE DETERMINED WITHOUT REQUIRING RELIABLE
      EVIDENCE THAT PETITIONER KNEW THE NATURE OF
      CONTROLLED SUBSTANCES "INVOLVED" IN THE CASE.

I. CONVICTION SHOULD BE SET ASIDE BECAUSE OF THE INEFFECTIVE
   ASSISTANCE OF COUNSEL.

   A) Petitioner was deprived of the right to testify by reason
      of trial counsel's failure to prepare him to testify
      on his own behalf.

Here, Petitioner has produced more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand. This is more than a violation of professional standards, by not preparing Petitioner to take the stand with advance time and spending only 5 minutes with Petitioner to discuss this very significant decision. The petition is supported by 4 affidavits of others who were present when the discussion took place. In fact Mr. Vega confirmed that these witnesses were in fact present, (See, transcript of proceeding of Nov. 17, 1997, pg. 7, L. 13-18).

(7)

The transcript of the proceedings is even more revealing as
to the confusion and utter lack of preparation given to this
critical decision by trial counsel for the Petitioner at the trial
on November 17, 1997, Mr. Vega addressed the court and advised
that Petitioner wanted to "...anticipate to the court that my
client will be taking the stand..." (TT. Nov. 17, 1997 pg. 3,
13-20). Mr. Vega operated under the misconception that the Petitioner
could somehow take the stand, limit the direct to very specific
matters relating to reputation, academic background, biographical
data and how he bought his home, (TT. Nov. 17, 1997, pg. 3, 15-20)
and thereby limit the government's ability to question the defendant
about other relevant facts and matters in controversy. This ill-
conceived trial stategy was short lived. The government objected
and the court ruled that the government could touch on any issue
that might impeach Mr. Raymond Hernandez-Albino's credibility.
(TT. Nov. 17, 1997, pg. 5, 17 thru pg. 6, 1-14). Because Mr. Vega's
ill-conceived understanding of the Rules of Evidence, he counseled
Petitioner not to testify on his own behalf.

This part of the record substantiates Petitioner's sworn
claim, that his attorney spent no time preparing him to testify.
Obviously, if the attorney believed he could have the defendant
get on the stand and testify as to such mundame issues without
being exposed to any risk to his client's credibility as all facts
and matters before the jury, such a belief was misguided, misplaced
and unprofessional. It is clear that the defendant was boxed into
stating on the record that he waived his right to testify. The
defendant was prevented from taking the stand by reason of his
lawyer's neglect in preparing him as a witness. Obviously, if

(8)

Mr. Vega knew the law, he would have known to prepare the defendant
for the government's possible attack. See F.R.Ev. 607.

Petitioner contended that despite his repeated request to
testify, his counsel prevented him from doing so, by "failing
to discuss the strategic implications of testifying or not
testifying and Petitioner's right to ultimately make the final
decision." **Gallego v. U.S.** 174 F.3d 1196 (11th. Cir. 1999).

The Petitioner's claim in the case at bar, is corroborated
by the transcripts and independent witnessess who were present
at the time the decision was made not to testify. Most glaring
is the fact that Mr. Vega walked into the court, thinking that
his client was going to testify and upon realizing that his tactical
judgment was flawed and that his preparation was lacking, persuaded
his client not to take the stand. Moreover, the court engaged in
only a cursory discussion with the defendant on the subject.
Under such curcumstance, the Petitioner has enough sufficient
evidence to warrant a hearing on the matter. See **Underwood v.
Clark,** 939 F.2d 473 (7th. Cir. 1991). Further, there are
specific facts supporting Petitioner's claim. **Siciliano v.
Vose,** 834 F.2d 29,30 (1st. Cir. 1987).

Where the Petitioner is supported by affidavit's which
contain detail facts in which corraborates Petitioner's allegations
of ineffective assistance, and when the record further supports
such allegations. A hearing is required to determine the truth
and significance of what is alleged. **U.S. v. Giardino,** 797 F.2d
30 (1st. Cir. 1986); **U.S. v. Unger,** 665 F.2d 251, 254 (8th. Cir.
1981).

B) **Petitioner was deprived of the effective assistance
of counsel, because trial counsel failed to request
that the court give an "ALLEN charge instruction.**

Petitioner alleges that Mr. Vega was ineffective as his
counsel. Mr. Vega failed to object to the charge given to the jury
after it had answered that it was hung. As set forth in **U.S. v.
Hernandez-Albino,** 177 F.3d 33, 37 (1st. Cir. 1999), trial court
gave a supplemental charge in response to the jury's impasse,
this court reviewed the issue, a one plain error, because it
was clear that the supplemental charge failed to meet the
requirements of **Allen v. U.S.,** 164 U.S. 492, 41 L.Ed 528 (1896),
this court held that the error was clear, but that it did not
affect Petitioner's substantial rights, because it was not coercive.
Id. at 38. In reaching this conclusion the court relied upon
Petitioner's counsel's statement that the charge was "not coercive
in the least." As set-forth in the supporting affidavit's and
letters from Petitioner to his counsel's over the course of many
years, Mr. Vega was unaware of what an ALLEN charge was and therefore
his statement on the record that the charge was not coercive is
a further example of the unprofessional conduct of trial counsel.

Clearly, supplemental charges should be undertaken with
great caution and only when absolutely necessary. **U.S. v. Fannery,**
451 F.2d 880, 883 (1st. Cir. 1971). However, subsumed in that legal
principle is the belief that a competent effective and prepared
attorney is vigilently reviewing the conduct of the prosecutor
and the court to make sure that his client's rights are not
violated in the slightest. Here, the attorney was so unprepared
and lacked critical knowledge of the law that he approved the
error ridden charge given by the court, thus leading the jury

to make an erroneous decision in this case and providing the
justification for the appeals court to deny relief to the Petitioner.
Since Petitioner was precluded from raising the claim of the
ineffective assistance of counsel in the direct appeal, this is
the opportunity to raise the issue when the Petitioner was able
to corroborate his position through other sworn statements. New
**Nevarez-Diaz v. U.S.** 870 F.2d 417 (7th. Cir. 1989).

## II. HONORABLE JUDGE DETERMINED THE DRUG TYPE AND QUANTITY, BY HIS OWN FINDINGS.

At trial, the Honorable Judge Laffitte read the following
to the jury, (TT. NOv. 17, 1997, pg. 74, L. 8-11):

> "The government is not required to prove that the
> amount or quantity of cocaine was as charged in the
> indictment. It need only prove beyond reasonable doubt
> that there was a measurable amount of cocaine."

The Honorable Judge explained two kinds of possession to
the jury in it's instructions, (TT. Nov. 17, 1997, pg. 74, 13-
16):

> "The law recognizes two kinds of possession: actual
> possession and constructive possession. A person who
> knowingly has direct physical control and dominion
> over a thing at a given time is then in actual possession
> of it."

To prove possession with intent to distribute, the government
is required to show that Petitioner knowingly and intentionally
possessed drugs, and did so with intent to distribute it.

To establish constructive possession, the government must
demonstrate that Petitioner had "power and intent to exercise
dominion and control over" the drugs. **U.S. v. Payton,** 159 F.3d
49, 56 (2nd. Cir. 1998), "[M]ere presence at the location of

(11)

contraband does not establish possession." **U.S. v. Rios,** 856
F.2d 493, 496 (2nd. Cir. 1998)

Mere proximity or presence is therefore insufficient to
support a finding of constructive possession. **U.S. v. Rodríguez,**
392 F.3d 539 (2nd. Cir. 2004).

The Honorable Judge never required the government to prove
the amount of cocaine, when in fact there was **never any cocaine.**
Yet no cocaine ever existed to posses, either actually or
constructively. However, contrary to the above instructions, the
government never presented or proved any measurable amount of
cocaine or any other drug during trial. This fictitious cocaine
is what the Honorable Judge Laffitte, based his own finding of
fact and associated sentence. All that could be found by the
jury beyond a reasonable doubt, if the witness was to be believed
was that Petitioner merely have loaned money to the witness for
an unknown quantity of an unknown drug.

Even at sentencing, the Honorable Judge Laffitte states the
following, (ST. April 20, 1998, pg. 39, L. 16-21):

> "But if you take a look at **U.S. v. Lindia,** which you
> also cite in your brief, 82 F.3d 1156, the drug quantity,
> for the purpose of 841(b), is determined by the
> sentencing court. Then it cites a case that says it's
> not for the jury to determine quantity, it's only
> for the jury to determine drugs."

Sentence was imposed in violation of law where both the
Guidelines Range and the Application of a mandatory minimum
sentence were determined without requiring reliable evidence
that Petitioner knew the nature or quantity of the controlled

(12)

substance "involved" in the case, nor was this determined by the
jury. The government did not prove by preponderance of the evidence
that Petitioner knew the type or quantity of the so called drugs
involved.

Since the law does recognize two kinds of possession, actual
and constructive possession., at Petitioner's trial the record
speaks for itself, the government even asked Ramirez-Ortiz the
following, (TT. Nov. 13, 1997, pg. 102, L. 17-19 and 22-24):

> Q. Did Raymond know the amount, the specific number
> of kilograms for the transaction?
> A. No, he did not know.
> Q. Did you tell him that it was for kilograms or
> smaller packages, or what?
> A. No, I did not tell him anything.

Even in Ramirez-Ortiz plea agreement, paragraph 2, of the
government version of the facts, he says:

> "The next day, April 23, 1997, Orlando and Armando
> informed the CI, that they only had enough money to
> purchase seven (7) kilograms. Earlier, Orlando informed
> Raymond Hernandez that he needed to borrow money for
> a drug deal."

Here Orlando Ramirez mentioned that they had the money to
purcahse seven kilograms, meaning that they Orlando and Armando
already had the money for the deal and this alone clearly says
that Petitioner did not hand them the money as been said
through-out trial. The jury had to have reasonable doubt, because
there was never no measurable amount of drugs. There was no
actual possession or constructive possession, and the jury
could not have determine the drugs, since there never were any.

(13)

Through the evidence that was shown at trial, it was not proven that Petitioner knew what type of buisness or what type of drugs was Ramirez and Armando were buying with the money that was supposedly borrowed.

The district court Honorable Judge Laffitte, should review his own misinterpretation of the events that occured at trial, because there was insufficient evidence on which a reasonable factfinder could have found Petitioner guilty under a constructive possession theory, nor did Petitioner knowingly and intentionally possessed drugs, either with intent to distribute as the indictment reads on count one.

### III. HONORABLE JUDGES FINDING THAT THERE WAS EVIDENCE THAT PETITIONER WAS THE BOSS IN THAT TRANSACTION.

The Honorable Judge Laffitte states on the record at sentencing, that Petitioner was an Aider and Abetter, a conspirator and the boss, (ST. April 20, 1998, pg. 35, L. 19-25 and pg. 36, L. 1):

> "Again I point out the differance between a person who
> is not present at the site of the transaction, who
> might claim, 'well, I lent money to John Doe because
> he said he had a problem in his family,' and then that
> person goes and does a transaction, a drug transaction.
> In this case he was there, he was an aider and abetter.
> He was a conspirator, a main conspirator, the boss, as
> the evidence shows. So that's my finding."

The end of justice principle applies here, because of the context of an error at the "sentencing" phase. This finding is clearly erroneous, because at the end of trial there was no basis and no facts in the record in which Petitioner was an

(14)

aider and abetter, nor was Petitioner a main conspirator and
even less the boss, as the Honorable Judge made in his findings.
The record clearly shows that Orlando Ramirez-Ortiz, admitted
to these facts, and the Honorable Judge's finding's were not
true, (TT. Nov. 14, 1997, pg. 30 L.3-14):

> Q. Sir I ask if it isn't true that Raymond Hernandez,
> the defendant, my, client, never instructed you
> concerning this drug transaction?
> A. No, sir.
> Q. Neither he coordinated anything concerning this
> drug venture?
> A. No, sir.
> Q. Nor he negotiated any price for the drugs?
> A. No. No, sir.
> Q. Then it isn't true that he was your boss on
> this venture?
> A. No, sir.

With  these statement's alone proves the fact that Petitioner
was not involved in this so call conspiracy, and never the less
an Aider and Abetter, because at sentencing the Honorable Judge
mentions that Petitioner was the boss, and that was his finding's.
With this proof alone justify's an "exceptional" circumstance
to justify "extraordinary" relief and this relief should never
be time barred, because of the unsupported factfinding in the
record justify's that "small escape hatch."

At sentencing day, it could have been that the Honorable
Judge Laffitte, recalled when the AUSA, Mr. John Teakell kept
making improper suggestions when the government presented it's
closing arguments, and kept repeating that Petitioner was the
"boss," when the record shows the complete opposite and that alone

consisted of prosecutorial mis-conduct. Mr. John Teakell stated
the following in his closing arguments to the jury, (TT. Nov. 17,
pg. 23, L. 23-25 and pg. 24, L. 1and 2):

> "Raymond is sitting back just waiting to provide the
> financing, letting Orlando do the odd jobs, 'El jefe.'
> as Orlando Ramirez had testified that he referred to
> him one time, talking to the Dominican. Yes, 'El Jefe'
> Raymond Hernandez.

The prosecutor should not have said to the jury that the
Petitioner was the boss, because it was never proven at trial,
and according to **Crawford v. Washington**, 541 U.S. 36, 74 Crl
401, 2004. Petitioner's Sixth Amendment Confrontation Clause
were violated, because the so called Dominican that the AUSA Mr.
Teakell refered to was never confronted in trial and the defense
could have cross-examine the testimony of this so called Dominican,
which should alone vacate Petitioner's sentence.

Again Mr. Teakell knowing the law of what should or shouldn't
be mentioned at closing arguments, and what a prosecutorial mis-
conduct consist of when closing his case, kept mentioning the
following, (TT. Nov. 17, 1997, pg. 25, L. 22 and 23):

> Who could come up with the money? Orlando Ramirez or
> "El Jefe."

Mr. Teakell kept mentioning a hearsay issue, that should
not have been allowed in his closing arguments, (TT. Nov. 17, 1997,
pg. 51, L. 18-24):

> He does refer to him as "El Jefe" one time when he was
> talking to the Dominican. I believe it was either the day
> before or the night at the Hotel. And that in itself is
> significant. And as we acknowledge once more, he was not-

> Raymond Hernandez part was the money deal. But it was
> extremely important, an extremely important part, "El
> Jefe."

Mr. Teakell kept inducing the jury to trust the government,
by insisting that Petitioner was "El Jefe," (TT. Nov. 17, 1997,
pg. 54, L. 16-18):

> Again, why was Raymond Hernandez present at that time
> and place, with money if he had nothing to do with it?
> It just does not make sence. "El Jefe" regarding the
> money.

The Supreme Court has observed a half century ago, the
government's representative "may prosecute with earnestness
and vigor-indeed, he should doso. But while he may strike hard
blows, he is not at liberty to strike foul ones."

Clearly the prosecutorial comments contained in the record
have no place in the proper administration of justice.

Prosecutor's may not make material statements of law or
fact. Prosecutor's should limit their trial statements and
closing arguments to evidence on the record and permissible
inferences there from.

Rule of fair play apply to all counsel and are to be observed
by the prosecution and defense alike. No counsel is to throw
verbal rocks at opposing counsel. The court will not accept such
conduct from any lawyer. If anything the obligation of fair play
by lawyer representing the government is accentuated. "Prosecutor's
do not have a hunting license exempt from the ethical constraints
on advocacy." **U.S. v. Murrah**, 888 F.2d 24, 27 (5th. Cir. 1989)

**In United States v. Young,** 470 U.S. 1,18, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1, 14 (1985):

> In recognition of the respected position held by prosecutors, the Supreme Court has warned that a prosecutors improper suggestion "carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than it's own view of the evidence."

The damaging effect of these remarks was not neutralized by the trial court's instructions: a just balance was not struck. In as much as the government's case based largely on circumstantial evidence, subject to varying reasonable inferences, the jury faced more than it's traditional assessments. These comments by the prosecutor exceeded the bounds of agressive advocacy and tainted the trial.

There is a two prong that has to be met in which a prosecutorial mis-conduct falls under: 1) the remarks must be improper, and 2) the remarks must prejudicially affect the substantial right of the defendant.

In viewing the record in it's entirety, the prosecutors conduct alone demanded a mistrial. It's more than clear with the above evidence that Petitioner was not a conspirator nor was he the boss as the Honorable Judge Laffitte, placed on the record at sentencing.

The record of the trial transcript's, clearly show that Petitioner was never an Aider and Abetter, because the record states the following from Ramirez statements, (TT. Nov. 13, 1997, pg. 115, L. 4-15):

(18)

> Q. Did you introduce him, though to either one of
>    these people?
> A. Only to the Dominican.
> Q. How did you introduce him?
> A. Well, when I arrived to the Toyota  4 Runner,
>    Raymond got off the Toyota.
> Q. What did he say?
> A. Who? Raymond?
> Q. Yes.
> A. He asked me what was going on?
> Q. What response did you give him?
> A. I did not answer him anything.

Clearly shows that Petitioner did not know anything about the transaction or the nature of the business that was to take place at the Hotel, is evidenced by Petitioner's actions at that particular moment when Petitioner stepped out of vehicle and asked Ramirez-Ortiz that question. Because in doing so, Petitioner put his own life at stake as any third party's life would have been endangered due to Petitioner's unespected appearance at the time and place of any illegal activity or transaction.

However, there must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictnment and knowingly joined and participated in it. **United States v. Gaviria,** 740 F.2d 174 at 183 (2nd. Cir. 1984).

Further, "[W]here the crime charged is conspiracy, a conviction cannot be sustained unless the government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute[s]." **United States v. Soto,** 716 F.2d 174 (2nd. Cir. 1983).

(19)

As can be read on the record, it clearly shows that Petitioner was never an Aider and Abetter, because charges of Aiding and Abetting require's the government to prove beyond a reasonable doubt, that the defendant knew the specific nature of the underlying crime. **In United States v. Pipola,** 83 F.3d 556, 562 (2nd. Cir. 1996), states:

> "To show specific intent the prosecutor must prove he
> knew of the proposed crime-suspicion that it might
> occur is not enough-and an interest in furthering it."

Again here the record of the trial transcript speaks for itself, Petitioner did not know what was about to occur, since Ramirez himself testifies to the fact that, Petitioner stepped out of his vehicle to ask, What is going on? Clearly proves that Petitioner did not know that a proposed crime was to occur.

The specific question of whether a defendant's knowledge that a gun will be used in the underlying offense is alone sufficient to support a conviction for Aiding and Abetting a violation of § 924(c). In Petitioner's case it is not, because Aiding and Abetting requires a defendant's conscious assistance in the commission of the specific underlying crime, and that Petitioner knew of the existance of the scheme alleged in the indictment and knowingly joined and participated in it.

Here the record speaks for itself, there is nothing more clearer than what the trial transcripts bring out, that Petitioner stepped out of his vehicle to ask: What was going on? Clearly shows that Petitioner did not have a specific intent to violate the substantive statute[s].

The trial transcripts has shown that Petitioner had a legal
license to carry his firearm 24/7, as the permit allowed him to.
So Petitioner's possession of the gun on that occasion was
coincidental, not "in relation to" any drug trafficking offense..
Petitioner was charged with knowingly, intentionally and willfully
carrying a firearm, as in count two of the indictment. But the
trial transcript as stated above, indicate the fact that how could
Petitioner be charged on count two of the indictment, when he
clearly stepped out of his vehicle to ask Ramirez-Ortiz: What
was going on? This charge should have been vacated under a Rule
29(a) motion, if Mr. Vega would have been more aware of what was
going on in Petitioner's trial, because the record cannot be more
clearer than the evidence of what occured at trial.

## IV. HONORABLE JUDGE FINDING THAT THERE WAS PREPONDERANCE OF THE EVIDENCE THAT PETITIONER KNEW THAT THE TRANSACTION WAS FOR DRUGS.

The Honorable Judge Laffitte mentions at sentencing that
Petitioner knew the transaction was for drugs, (ST. April 20,
1998, pg. 35, L. 1-12):

> "In this case I find that he knew the amount of the
> drugs, and even if he didn't know-- even if he didn't
> know it, you can attribute to him the knowledge by the
> fact that he was there to protect the $123,000 dollars,
> and that it is logical to presume that with that amount
> of money you are not going to buy a small amount of
> drugs. So I find by preponderance of the evidence that
> the defendant knew that it was for drugs and that the
> amount is correct amount of drugs...

Here the Honorable Judge mentions that by preponderance of
the evidence that the defendant knew it was for drugs. So the
Honorable Judge if anything at that sentencing day, should have
sentenced Petitioner to drugs and not cocaine as it was brought
out at trial, that the defendant knew that it was for drugs. If
Petitioner knew that it was for drugs, then the Petitioner should
have been sentenced for the lowest of the sentencing guidelines,
because here we have the Petitioner that has never seen or used
drugs in his entire life and here the Petitioner would not know
what is any typical street drug. There was no evidence that Petitioner
"knew the amount of drugs", as stated in the above argument. In
fact the only evidence on point that of Ramirez, is directly on
the contrary. Nor is there any evidence that Petitioner had any
experience in drugs or any other basis to infer that Petitioner
could have foreseen how much of the so called drug, could have
been bought with $123,00 dollars, or if Petitioner could have
known that with that amount of money, you could purchase over five
(5) kilograms of cocaine, or any other quantity of any other
controlled substance. There is no evidence that Ramirez or anyone
else told Hernandez the negotiated quantity (or the nature of the
substance, other than "drugs"). If the agents actually brought
any real drugs to the scene of the reverse sting operation,
Petitioner never saw them and the drugs were never presented.

V.   SENTENCE WAS IMPOSED WHERE BOTH THE GUIDELINE RANGE AND THE
     APPLICABILITY OF A MANDATORY MINIMUM SENTENCE WERE DETERMINED
     WITHOUT REQUIRING RELIABLE EVIDENCE THAT THE PETITIONER
     KNEW THE NATURE OR QUANTITY OF CONTROLLED SUBSTANCE
     "INVOLVED" IN THE CASE.

For the purposes of sentencing, the court was bound to accept the jury's verdict on count one as establishing that Petitioner knew that the money he was supposedly asked for to supply Orlando Ramirez-Ortiz, was for the purpose of purchasing "drugs." There was no evidence at trial however, and none presented at sentencing that Petitioner knew that cocaine was the "drug" that Ramirez intended to purchase, nor that Petitioner knew how much cocaine, or how much of any drug could or would be purchased with that money. In particular, there was no evidence that Petitioner knew the amount was or would be between 5 and 15 kilograms, if the drugs was cocaine (or any equivalent amount of any other controlled substance). The court's rejection of the defense objections to the PSI on this issue was based on a mixture of legal error and unsupported factfinding. This knowledge was the government's burden to prove under USSG § 1B1.3(a)(1)(A) & (B)(describing "relevant conduct"). In the absence of such evidence, the base level should have been held to be 12, implicating a guideline imprisonment range of 10-16 months, not 32 (range 121-151 months).

Under USSG § 1B1.3(a)(1)(A), no quantity of drugs was attributable to Petitioner because it was not Petitioner, but rather Ramirez who was to make the (imaginary) purchase. He could be responsable for any quantity of the drugs above the minimum contemplated by USSG § 2D1.1(c), then, only if he "jointly undertook" Ramirez attempted purchase of seven kilos of cocaine within the meaning of § 1B1.3(a)(1)(B). If petitioner had "knowledge of any particular quantity of cocaine" and if "no particular quantity was foreseeable to him in connection with the conspiracy" for

(23)

which he was convicted, then no quantity can be used to increase the guideline range. **United States v./Chalarca,** 95 F.3d 239, 245 (2nd. Cir. 1996)

At sentencing the court erred in holding that the jury verdict bound it to sentence on the basis of seven kilograms of cocaine, because that quantity was charged in the indictment.

That rationale is erroneous, because the jury verdict only determined that Petitioner entered into an agreement with co-defendant Ramirez to possess a controlled substance with intent to distribute it. The jury was not instructed that it had to find Petitioner had entered into an agreement as to the nature of the drugs, nor as to the quantity, and the verdict cannot be read as implying such findings. The court's holding at sentencing based on the verdict was therefore erroneous.

As the Second Circuit Ruled in **Chalarca,** "mere presence at the scene was not enough to fulfill the foreseeability requirement." 95 F.3d at 245. The Second Circuit has recognized a defendant who is "totally lacking in any knowledge of the cocaine trade, would have no idea how much cocaine could be purchased for $70,000 dollars." There is no sound basis to conclude that either the street value or the whole sale price of illegal drugs is common knowledge among gainfully employed engineers and of a crime free history. The critical finding  of the sentencing court is therefore without foundation, making it clear error. The correct offense level, if one must be selected from the USSG § 2D1.1(c), is therefore one "based on the least amount of drugs that appears in the sentencing Guideline drug quantity table.

(24)

Because there is no evidence at all that Petitioner knew
the nature or quantity of the controlled substance that his co-
conspirator "agreed" to buy from the agents, this is a very unusual
case of a conviction for conspiracy to possess a controlled
substance with intent to deliver. Arguably, there is no satisfactory
way to fit such cases into scheme established in USSG § 1D1.1 of
the guideline at all, because of it's dependance on the type and
quantity of controlled substance. If so, then sentencing Reform
Act required that the court:

> Impose an appropriate sentence, having due regard
> for the purpose setforth in subsection (a)(2). [T]he
> court shall also have due regard for the relationship
> of the sentence prescribed by guidelines applicable
> to similar offenses and offenders, and to the applicable
> policy statements the sentencing commission.

18 U.S.C. § 3553(b), if the court determines that level 12
was not applicable but that level 32 was not obligatory, then
it should remand for resentencing, under general criteria of §
3553(b), which govern "[i]n the applicable sentencing guideline."

For much the same resons, this court should hold that for
mandatory minimum purposes under 21 U.S.C. § 841(b)(1)(A)(ii)(II),
made applicable by id. § 846, this case does not "involv[e]"
five or more kilograms of cocaine. Particularly in a conspiracy
case, neither the guideline nor the madatory minimum term applies
to any amount that the defendant does not know of and intent to
possess with intent to distribute. USSG § 2D1.1, apl. notes 12
and 15: **See United States v. Jimenez- Martinez,** 83 F.3d 488,
496-97 (1st. Cir. 1996); **United States v. Lindia,** 82 F.3d 1154,

1159-62 (1st. Cir. 1996); **United States v. Pion,** 25 F.3d 18, 25
(1st. Cir. 1994). There is no evidence that Petitioner **agreed**
with Ramirez to attempt to purchase Five or more kilograms of
cocaine, which is what would make a conspiracy "involve" that
much of that drug. As the Supreme Court has iterated: "without
the knowledge, the intent cannot exist." **Ingram v. United States,**
360 U.S. 672 and 680 (1959), quoting **Direct Sales Co. v. United
States,** 319 U.S. 703, 711 (1943). Therefore, the mandatory
minimum term of ten years under § 841(b)(1) does not apply.
**United States v. Chalarca, supra, cf, United States v. Pion,** 25
F.3d at 25 n. 12 (principles of § 2D1.1, appl. 12, apply to
interpretation of mandatory minimum provision).

Just as a conspiracy conviction cannot be sustained without
proof of agreement of the essential nature of the criminal
objective to be achieved, **United States v. Brandon,** 17 F.3d 409,
428 (1st. Cir. 1994); **United States v. O'Campo,** 973 F.2d 1016,
1019 (1st. Cir. 1992), so a conspiracy sentence under 21 U.S.C.
§ 846 cannot incorporate a mandatory minimum under § 841(b),
without proof of knowledge that possession of the triggering
quantity (of the specified substance) was the object of that
conspiracy. Because the government never proved that Petitioner
had **knowledge** that a particular greater quantity of cocaine was
intended to be purchased, the maximum sentence was 20 years
under 21 U.S.C. § 841(b)(1)(c), and there was no mandatory
minimum term.

## CONCLUSION

The due process clause of the Fifth Amendment guarantees
the Petitioner the right not to be convicted of a criminal offense
unless the government proves each and every element of the offense
beyond a reasonable doubt.

The indictment charged Petitioner with conspiracy to possess
with intent to distribute seven kilograms or more of cocaine in
violation of 21 U.S.C. § 846. Conspiracy to possess with intent
to distribute a controlled substance requires specific intent
to reach an agreement and specific intent to commit the objective
offense. In this case, the objective offense was possession with
intent to distribute cocaine.

In the case at bar, there is no evidence from which a rational
juror could conclude beyond a reasonable doubt that Petitioner
reached an agreement to possess with intent to distribute cocaine
or any other controlled substance, as been shown in the above
motion.

According to the testimony, Ramirez-Ortiz took pains not
to inform Petitioner that he (Ramirez) was borrowing money to
purchase cocaine. At trial Ramirez testified that at the very end
he notified Petitioner that he was going to use the money to
purchase drugs. Petitioner has constantly asserted that Ramirez
did not inform Petitioner that he was using the money to purchase
controlled substances. However, Petitioner was precluded from
telling the jury what actually happened, because of his attorney's
ineffective assistance. There is no testimony on the record that

(27)

corroberates that Ramirez informed Petitioner that he was using the money to purchase cocaine or any other controlled substance.

A jury verdict cannot be based on speculation, because if evidence is balanced, jury must have reasonable doubt and evidence of equal weight results in acquittal. If the evidence, though gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the court should reverse the conviction, as under these circumstances, a reasonable jury must necessarily entertain a reasonable doubt.

The jury was not instructed accordingly to find that Petitioner had entered into an agreement as to the nature of the drugs, nor as to the quantity, and the verdict cannot read as implying such findings.

In view of the above, the Honorable Judge Laffitte's own findings that "there was preponderance of the evidence," was erroneous.

The Constitution prohibits allowing a judge alone to make a finding that raises the sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant. Application of the Federal Sentencing Guidelines resulted in impermissible factfinding in Petitioner's case.

The jury if anyone, should have been the ones to determine how much of any drug applied to Petitioner. In the absence of such evidence, the base offense level should have been held to be 12, implicating a guideline imprisonment range or 10-16 months.

Just like the Honorable Judge struggled with this same
record, also the jury struggled becsuae the record was very
thin and the jury were hung, it could have gone either way.
Even the government struggled with this case, their star and
only witness was facing the same incarceration time as Petitioner,
because the government claimed that their witness was not credible
in trial even with the conviction. The government asserted that
their star witness was a liar, but here Petitioner will continue
to find a remedy according to the law and what is on the record
of trial. (See attached newspaper article, where the government
did not believed in their witness testimony and was denying
their only witness a reduction of sentence. Feb. 19, 1998.)

In light of the considered above, this case was weak and
deficient and Petitioner is still till this day claiming his
innocence, even without any legal help at this camp. If the court
could revew what is on the record and what Petitioner has been
proving in the pending motion, Petitioner should have his indictment
dismissed for insufficient evidence.

As in **Gonzalez v. Secretary for Dept. of corrections,** 366
F.3d 1253 at 1308 (11th. Cir. 2004), the district court had not
entertained the motion because it mistakenly thought that it
lacked jurisdiction. The court should not abuse it's discretion
when it misapplies the law. This case was remanded in order for
the district court to consider the motion on the merit's.

The Rule allows the district court to set aside any judgment
for any reason where justice requires relief. Here the trial
attorney's belief that he could place his client on the stand
to testify about character issues only, was blatantly contrary

(29)

to F.R.Ev. 607. A lawyer just out of school would have known better, therefore it is evident where the defense could not get before the jury because of a lawyer's blunder that the Petitioner was deprived of his rights, should be allowed to receive relief under Fed. R. Civ. P. 60(b)(6).

**WHEREFORE,** Petitioner prays that the court relieves the defendant from the final judgment entered in this matter pursuant to the Authority of Fed. R. Civ. P. 60(b)(6); or alternatively granting the Petitioner an evidentiary hearing to determine the truth and significance of what has been set forth in the supporting affidavits and to determine whether the requested relief should be granted; and for such further relief as the court shall deem just and reasonable under the circumstances.

At Schuylkill, Pennsylvania, 12th. day of July, 2005.

**Respectfully Submitted,**

Raymond Hernandez-Albino Pro-Se
Reg. No. 14736-069 C-2/B-15
FPC Schuylkill
P.O. Box 670
Minersville, PA. 17954-0670

## CERTIFICATE OF SERVICE

I **Raymond Hernandez-Albino,** hereby certify that on the 15th. day of July, 2005, I have served a copy of the Memorandum of law in support of motion for relief from judgment under Fed. R. Civ. P. Rule 60(b)(6), on the following by First Class Mail, postage prepaid to:

> HUMBERTO S. GARCIA, Esq.
> ASSISTANT UNITED STATES ATTORNEY
> ROOM 452
> FEDERAL BUILDING
> 150 CARLOS CHARDON ST.
> HATO REY, PUERTO RICO 00918

Dated: July 12, 2005.

Raymond Hernandez-Albino

# U.S. Attorney said reneging on plea bargain

**By MANNY SUAREZ**
Of The STAR Staff

The U.S. Public Defenders Office filed a complaint with U.S. District Judge Héctor M. Laffitte Wednesday charging the U.S. Attorney's Office with going back on a plea agreement with a drug suspect who had testified against other members of a drug gang.

At a hearing before Laffitte, Assistant Public Defender Aura Maldonado charged that in the plea agreement, her client (whose identity is being withheld for his safety) had agreed to testify against Raymond Hernández Olivo, an engineer who was indicted in a two-count drug case. Two others pleaded guilty.

Maldonado contended that her client complied with the agreement and testified against the engineer who was found guilty and is facing a sentence of 15 years in prison.

But the attorney said that the U.S. Attorney's Office reneged on the agreement in which her client would get from seven to nine years for his help to the prosecution, and that the man is now facing the same sentence as the engineer. In addition, Maldonado said, his life is at risk and his home was fired at about two weeks ago.

Arguing before the judge, Assistant U.S. Attorney John Tito said that on the witness stand the accused stammered in uncertainty and appeared to be holding back, causing them to believe he had not complied with his commitment.

Laffitte said Maldonado was "barking up the wrong tree" and rather than asking the court to intervene, she should be taking her case to the U.S. Attorney's Office.

Maldonado agreed and said she wanted the opportunity to discuss the issue with her supervisors.

After Laffitte read from the witness' trial testimony, Tito said he remembered seeing Hernández Olivo making intimidating gestures toward the witness, which may have contributed to his uncertain testimony. He said he was amenable to a meeting with Maldonado.

Laffitte ordered the defense and prosecution to get together to see if they could work things out and recessed the morning hearing until the afternoon.

Laffitte allowed the defendant to remain free on bail for 10 more days to see if he can cooperate well enough to permit the prosecution to agree to the lower sentence.



LOCAL NEWS

*Sección para América Thing...*

EL FESTIVAL DE CARNAVALES

THE RITZ-CARLTON
SAN JUAN HOTEL AND CASINO
EN

Se ... nuestras Damas y Caballeros darle
...sted y/sus invitados a nuestra ...

GRAN FIESTA DE CARNAVAL
SÁBADO, 21 DE FEBRERO
Carnaval Brasilero

# S.J. murder rate highest; ... down islandwide



# primer plano

EL NUEVO DIA · JUEVES 19 DE FEBRERO DE 1998

**43**

# Impugnada una recomendación de sentencia

**Por JUANITA COLOMBANI**
**DE EL NUEVO DIA**

LA OFICINA del defensor público federal impugnó ayer ante el juez federal Héctor Laffite una recomendación del fiscal federal Guillermo Gil para sentenciar a 15 años a un joven que se convirtió en testigo del gobierno, y que con su testimonio, un ingeniero fue encontrado culpable de varios cargos de droga y violación a la ley de armas.

La abogada Laura Maldonado, de la oficina del defensor público federal, explicó que impugnó la recomendación de sentencia de la Fiscalía porque su cliente se enfrenta a la misma condena que será impuesta a la persona contra quien declaró. Otros dos acusados en este caso se declararon culpables.

Esta no es la primera vez en los últimos meses que un abogado plantea ante un juez federal que la Fiscalía no cumple con acuerdos a los que ha llegado con cooperadores.

"Aquí estamos para hacer justicia", dijo Maldonado al juez, que finalmente concedió 10 días a las partes a ver si podían llegar a un acuerdo. Inicialmente, Maldona³) pidió una vista evidenciaria para demostrar que su cliente cumplió con los términos del acuerdo.

MALDONADO PLANTEO que su cliente –que está en libertad bajo fianza– puso en riesgo su vida al declarar contra una persona acusada junto a él por los mismos hechos, y que apenas hace dos semanas su residencia fue tiroteada, por lo que merece un mejor arreglo.

"No sé a dónde va nuestro sistema de justicia si su señoría permite al gobierno venir aquí y decir que el testigo no dijo la verdad... sin darle la oportunidad de presentar evidencia a esta corte de que su testimonio fue veraz", dijo la abogada.

Al principio de la vista, el fiscal planteó al juez que el testigo fue "hostil" y no cumplió con el acuerdo de cooperación porque a preguntas que debió responder "sí" dijo "no", pero luego –tras una reunión con Gil en su oficina en el Edificio Federal de Hato Rey– esta versión fue cambiada por

el jefe de la División Criminal de la Fiscalía, Jorge Vega Pacheco.

Vega Pacheco dijo al juez que no se recomendó un mejor trato en la sentencia porque el testigo exhibió un "problema de comportamiento" al declarar, que la Fiscalía interpreta como que no cooperó "sustancialmente", uno de los requisitos que dispone el acuerdo de colaboración.

EL NOMBRE del testigo no se incluye en esta historia a

lados a este caso.

solicitud de la oficina del defensor público federal por razones de seguridad.

Sin embargo, a pesar de esta circunstancia la Fiscalía planteó en sala su interés de que el testigo le dé información sobre otros asuntos no ligados a este caso, para enmendar su recomendación de sentencia. No obstante, el acuerdo de colaboración dispone que sólo aplica para los hechos vincu-