UNITED STATES DISTRICT COURT
THE DISTRICT OF PUERTO RICO            X

RAYMOND HERNANDEZ-ALBINO
   Petitioner

               AFFIDAVIT IN SUPPORT OF MOTION
               TO VACATE JUDGMENT PUSUANT TO
Vs.                FED. R. CIV. P. 60(b)(6)

               CIVIL CASE NO. _____
UNITED STATES OF AMERICA    CRIMINAL CASE NO. 97-0099(HL)
   Respondent           X

States of Pennsylvania  )
             )
County of Schuylkill    )

   RAYMOND HERNANDEZ-ALBINO, being first duly sworn, deposes and says:

   1. I am Petitioner in the above captioned proceeding, and I made this affidavit in support of my motion to vacate the judgment entered on April 20, 1998, by the Honorable Judge Hector M. Laffitte, to 181 month term of imprisonment.

   2. On November 17, 1997, I was convicted after a jury trial of a three count indictment and was found guilty on count one charge of conspiracy in violation of 21 U.S.C. § 846. Guilty on count two knowingly, intentionally and willfully carrying two firearms during and in relation to, in violation of 28 U.S.C. § 924(c)(1). Not guilty on count three, in violation of 18 U.S.C. § 924(k).

   3. At sentencing the court determined that level 32 was the appropriate level that the court must sentence Petitioner, even though in the record it was brought out that, since Petitioner was not aware that his co-defendant's were purchasing cocaine

(1)

with that money, Petitioner should have been sentenced to level 12, (10-16 months).

4. On count one of the 21 U.S.C. § 846, Petitioner was sentenced to 121 months. On Count two of the 28 U.S.C. § 924(c)(1), Petitioner was sentenced to 60 months consecutive sentence.

5. Petitioner Appealed to the First Circuit on May 20, 1999, the First Circuit rejected the arguments because defense counsel did not protect the record by filing appropriate and timely objections, and affirmed conviction.

6. Petitioner filed a motion to vacate, set aside, and/or correct Petitioner's sentence pursuant to 28 U.S.C. § 2255. The District Court denied that motion on September 26, 3003.

7. Petitioner filed for an Application for Certificate of Appealability and the appeals court denied it on June 8, 2004.

8. Petitioner has been working on his own as a pro-se litigant and filed on November 3, 2004, a motion under the U.S.C. 28 § 2255 Saving Clause w/affidavit, and was denied on November 16, 2004.

9. Petitioner submitted to the District Court a Reconsideration Motion under Fed. R. Civ. P. , Rule 33, on November 25, 2004. This motion was also denied on December 6, 2004.

10. Petitioner Appealed to the First Circuit Court of Appeals on December 11, 2004, and the United States Court of Appeals for the First Circuit, denied Petitioner's motion on May4, 2005, as being untimely and that the new evidence was inadequate to disturb the original verdict.

11. Petitioner then submitted a motion for review of

sentence pursuant to 18 U.S.C. § 3742(a)(2), and was denied on May 31, 2005.

12. After being incarcerated for such a long period of time, Petitioner now realizes that it was due to the money that was found in Petitioner's vehicle, that Petitioner is incarcerated and lost his trial with ineffective assistance of counsel. Petitioner wants to set the record straight and duly sworn in presence of a Notary Public that:

> A) Petitioner has always mentioned to his attorney's that the money that was discovered when Petitioner was arrested on April 23, 1997, never belonged to the Petitioner.
>
> B) This was finally mentioned after Petitioner kept arguing with his attorney about the fact and it was finally placed in the 2255 motion to the Magistrate, in the objections to report and recommendation that was submitted to the Honorable Judge Laffitte, which states: "Petitioner denies that the $123,500 dollars found in the vehicle belonged to him."
>
> C) Petitioner is willing to be submitted to a lie detector test, to prove to this court that the $123,500 dollars, was never his and all along through out his whole conviction, Petitioner has been claiming that fact.

13. I want the court to understand, that I was not given effective assistance of counsel when the decision was made that I should not testify on my own behalf. The decision was made within five (5) minutes after all of my other witnesses had testified and Mr. Vega spent no time discussing the implications of how the jury would perceive for me not to testify.

14. Defense counsel bears the primary responsibility for advising the defendant of his right to testify, or not to testify, the strategic implications of each choice and that it is ultimately for the defendant himself to decide. Now the question is, why didn't Mr. Vega prepare me as his client to take the stand? I was never directed on how to be ready for cross-examination by the government. Mr. Vega had the time to prepare me for what ever attack I was to face, but no, he did not do so. Here is a clear case of ineffectiveness of counsel, by not preparing me to take the stand at this very crucial point of my life.

15. I was questioned by the court about my decision not to testify. I acknowledged on the record that I was waiving my right to testify. However, my waiver was not a knowing waiver. The implications of the decision not to testify were never explained to me by my lawyer, Mr. Vega. He never prepared me to take the stand to testify and following a five minute discussion, I believed that I had no choice, but to follow his lead. He never attempted to engage me in a mock examination, or a mock cross-examination. All he said was that I should not testify. The Supreme Court has recognized that there is "no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecutions case." **Ferguson v. Georgia,** 365 U.S. 570, 582 (1961). In **Rock v. Arkansas,** 483 U.S. 44 (1987), The Supreme Court has clearly and strongly indicated that the Constitutional Right to testify should be treated as fundamental. Therefore, my defense lawyer had a professional responsibility to do more than take my money and do nothing with regard to protecting this Constitutional Right to testify on my own behalf. I was the

best witness available to confront the lies of the co-defendant who was paid with leniency for his testimony. The jury was left with unanswered government allegations of why I was at this location. Since the defense, Mr. Vega advanced was that I was at the wrong place at the wrong time, my testimony was critical. The fact that the jury was hung after deliberating is a strong indication of the fact that the jury needed to hear from me.

16. I had no reason to fear cross-examination from the government, Mr. Vega recommended me not to testify in front of my whole family, but my character was beyond reproach. At the time of trial, I was 37 years old and I was ready to tell my story. I was gainfully employed by Merck Sharp & Dohme, of Puerto Rico for over 10 years. I owned a consulting firm by the name of Raymond Hernandez and Associates. I was recognized as an expert Process and Instrumentation Diagram, Design Engineer. I was consistently employed in Puerto Rico since July of 1983, till the day of my disgrace. I studied engineering at New York City College and returned to Puerto Rico in 1983. I had no prior criminal history and in fact, I have been approved and licensed in the CommonWealth of Puerto Rico to carry a firearm 24-7. I was a good father, I had custody of my 14 years old daughter, as well as my other three children and I was a good husband. There was no reason for me not to take the stand, other than my attorney not spending the time to prepare me as a witness. From the time that I hired the services of Mr. Vega, till the time that we went to trial, we did not spend no more than 8 hours together preparing and discussing the case, and he never even prepared me to take the stand.

17. Mr. Vega didn't have any strategy to explain my story

to the jury and explain that this was not my money, also to explain why I was at the scene to pick up my buisness cellular phone, which did arise during trial. I had no knowledge of any drug transaction that was about to occur that day, as noted in the attached affidavit that Orlando Ramirez-Ortiz signed on October 28, 2004.

18. There was no competent evidence presented to the jury to refute the government's case. See **U.S. v. Hernandez-Albino**, 177 F.3d 33, 41 (1st. Cir. 1999). Orlando Ramirez-Ortiz has confirmed that he lied on the stand and even the government accused him of the same thing, lying.

19. I began to seriously doubt Mr. Vega's professional competence, after having a conversation with him while I was in custody at Guaynabo, Puerto Rico, I happened to have read a newspaper article where I first learned of an "ALLEN" charge instruction. At my trial the jury was hung, it was at an impasse, so the Honorable Judge returned a note back to the jury and the note did not include the required elements of an ALLEN charge. My Lawyer did not object to either the manner in which the Judge responded to the jury (by written note) or the substance of that reponse. Within an hour, the jury returned a guilty verdict on the first two counts. I called Mr. Vega to discuss what I had learned about what an ALLEN charge really consisted of and I was shocked when Mr. Vega admitted to me that he did not know what an ALLEN charge really consisted of or what an ALLEN charge was. (See attached letters of what I have been reminding Mr. Vega and the affidavit where Millitza Cortez-Maldonado, corraborates this fact)

20. Another glaring example of Mr. Vega's ineffectiveness, was that in the five months between the time the government made a verbal plea offer of 10 years, to the time when I started my trial, Mr. Vega never spent anytime explaining the implications of how accepting a plea could have reduced the amount of time to which I was exposed. While I maintained my innocence, I have come to learn from my own legal research that it is very important for a lawyer to explain how the Federal Sentencing Guidlines worked before the recent change in the law. I learned that under the Federal Sentencing Guidelines, there were downward adjustments availbale to the sentencing level, pursuant to § 3E1.1(a) and (b), § 5C1.2 and other similar adjustments which could have reduced the amount of the time imposed by the sentencing court.

21. The record speaks for itself, Mr. Vega should have been prepared to submit a Rule 29(a) motion just after the closing arguments, in order to enter a judgment of acquittal of the offense for which the evidence was insufficient to sustain a conviction and dismiss counts one, two and three of Petitioner's indictment. Petitioner's co-defendant trial testimony alone mentioned that I was not part of any type of drug transaction, nor did I coordinate anything in the reverse sting drug transaction. I have always maintained that, if they were about to commit a drug transaction then why did I step out of my vehicle to ask Orlando Ramirez-Ortiz: "What was going on?" Clearly showed that the indictment in which I was charged with, should have been dismissed since there was not sufficient evidence that the firearm which I carried with a license was actively employed in any way to this so called reverse sting operation. And because of Mr. Vega's ineffectiveness, he

should have been ready and prepared with a Rule 29(a) motion, asking for an acquittal of my whole indictment, since the record clearly showed that I was not part of the drug crime and the evidence was insufficient to establish that I had used my firearm within the meaning of § 924(c)(1). Mr. Vega was also unprepared to argue certain substantive points of law in support of Rule 29 (a) motion. In particular, we should have been ready to argue that **Bailey v. United States,** 133 L.Ed 2d 472, 116 S.Ct. 501, was applicable to my case. That is what the court should have considered as relating to the weapon charged, since there was no direct proof that the weapon was used in connection with a drug transaction. However, he did not make the argument when he should have, in addition, this highlights why it was so important for me to take the stand, to explain to the jury that I was licenced to carry a gun by Puerto Rican Authorities and the reason why I was at the wrong place at the wrong time. Because of Mr. Vega's ineffectiveness and lack of preparation, Here I stand in prison seeking my freedom.

22. Through out my direct appeal and all my post conviction applications, I asked my attorney's about Mr. Vega's professional incompetence and they only asked me to call Mr. Vega and ask him to give me an affidavit stating these facts, I replied by saying: that they had a better chance in communicating with Mr. Vega, since they are brother counsel's and their chances are better than mines, to make contact with Mr. Vega, in order to ask for this affidavit. (See attached letter's that I have sent my attorney's)

23. It was not an issue of money, I have paid all my attorney's anything they billed me for. However, I don't feel that I was represented effectively through out this whole ordeal.

24) Petitioner incorporates a Memorandum of law in support of his motion for relief from judgment.

**WHEREFORE, PETITIONER RAYMOND HERNANDEZ-ALBINO,** has been trying to convince the court of his innocence after all these years and is willing to be submitted to a lie detector test, in order to clear the fact that the money in which Petitioner has been incarcerated after all these years, will justify all the arguments that Petitioner is innocent and has kept placing these issues in his motions. Petitioner is innocent of the charges and for that reason alone, Petitioner has been fighting pro-se. Petitioner prays that the court review his Memorandum of law, in support of motion for relief from judgment under Fed. R. Civ. P., Rule 60(b)(6), and vacate or re-sentence the final sentence of an incorrect application. Even at sentencing Petitioner cried out to the Honorable Judge, demonstrating my innocence and hopefully now through this affidavit and the attached motion, the Honorable Judge could review the motion set forth.

At Schuylkill, Pennsylvania 11th. day of July, 2005.

Respectfully Submitted,

Raymond Hernandez-Albino, Pro-Se
Reg. No. 14736-069 C-2/B-15
FPC Schuylkill
P.O. Box 670
Minersville, PA. 17954-0670

Sworn to before me on this 12 day of July, 2005.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
William E. Rasinger, Notary Public
Minersville Boro, Schuylkill County
My Commission Expires Mar. 20, 2006
Member, Pennsylvania Association of Notaries

(9)